[Civ. No. 32377.   Second Dist., Div. One.   Dec. 6, 1968.]

FIRST WESTERN BANK AND TRUST COMPANY, Plaintiff and Appellant, v. EMON HERMON BOOKASTA, Defendant and Respondent.

Harrison, Freytag, Halversen & Hemphill and Marilyn V. Freytag for Plaintiff and Appellant.

Gold, Herscher & Taback and Daniel M. Herscher for Defendant and Respondent.

FOURT, J.—First Western Bank & Trust Company (hereinafter sometimes referred to as First Western) appeals from the order of dismissal[1] entered as to respondent Emon Hermon Bookasta pursuant to an order sustaining without leave to amend his general demurrer to each of the two counts in the subject complaint.

The complaint herein alleges in the first count that on or about April 23, 1966, in the City of Pomona, County of Los Angeles, State of California, a "Corporation Note" in the principal amount of $7,070.14 was executed in favor of First Western by Laura Bookasta, Secretary and M. N. Ward, President, acting on behalf of Orange Empire Productions. The complaint further alleges that defendant Orange Empire Productions defaulted under the terms and conditions of the note after having paid only $340 and that there is still due and owing to First Western on said obligation the sum of $6,730.14 together with interest at 7½ percent per annum from April 24, 1966, to date together with costs and reasonable attorneys' fees.

The second count, which realleges and incorporates all of the allegations contained in the first count, purports to state a cause of action because of indebtedness of Orange Empire Productions against respondent and other named defendants individually on an *alter ego* theory of liability. First Western therein additionally alleges that certain named individuals, including E. H. Bookasta, "dominated, influenced and controlled" the affairs of the corporate defendant; that at all times therein mentioned there existed a "unity of interest and ownership" between the individual defendants and the cor-

---

[1]The notice of appeal filed by First Western specifies that it appeals from both the order sustaining the demurrer and the order of dismissal as to E. H. Bookasta. We dismiss as improper its purported appeal from the order sustaining the demurrer which is not an appealable order.

porate defendant so that the individuality and separateness of the individuals and the corporation was not maintained; that at all times since its incorporation the corporation has been a "mere shell and naked framework" which each of the individual defendants used as a conduit for the conduct of their personal, individual affairs; that the corporation was created and continued pursuant to a "fraudulent plan, scheme and device" whereby its income, revenue and profits were diverted to the individual defendants; that the corporation was fraudulently used by the individual defendants "as an obligor for the assumption of obligations and liabilities incapable of performance by" the corporation, and that the liability of the parties to the plaintiff is of such character that the use of the corporate fiction constitutes a fraud on the corporation's creditors, including the plaintiff; that adherence to the fiction of the corporation's separate existence would, under the circumstances, sanction a fraud and promote injustice; that the corporation is an *alter ego* to each of the individual defendants and that it was organized as a "mere shell and sham, without capital, assets, stock, or stockholders" in which at no time was unencumbered capital placed at risk; and, finally, that the plaintiff is informed and believes and thereon alleges that the corporation is insolvent and will be unable to respond in the amount due and owing according to the first cause of action.

First Western made no request to amend the complaint in the trial court but it contends on appeal that the court abused its discretion in sustaining a general demurrer to the original complaint without leave to amend; that all allegations of the complaint must be deemed true as against a general demurrer; and that section 3401 of the Commercial Code does not preclude the assertion of the liability of the individuals by application of the *alter ego* doctrine.

Appellant first contends that the trial court abused its discretion in sustaining the general demurrer of respondent E. H. Bookasta without leave to amend as to plaintiff's original complaint. █ It is, however, proper for the trial court to sustain a demurrer without leave to amend at any stage in the proceedings where the nature of the plaintiff's claim is clear and it is equally clear under the substantive law that no cause of action against the named defendant or defendants exists. (*Routh* v. *Quinn*, 20 Cal.2d 488, 493 [127 P.2d 1, 149 A.L.R. 215].) █ First Western bases its first cause of action

solely and exclusively upon the promissory note which was signed by two officers on behalf of Orange Empire Productions. E. H. Bookasta is neither an obligor on the note nor one of the signing officers of the corporation. Section 3401 of the Commercial Code provides in pertinent part: "No person is liable on an instrument unless his signature appears thereon." Of course, the non-signing party may nonetheless remain liable on the original obligation for which the instrument was given, or on other facts and circumstances relating to the same transaction. However, since it is clear that respondent is not liable directly on the promissory note set forth in *haec verba* in the complaint, his general demurrer to the first cause of action was properly sustained without leave to amend.

Appellant correctly contends that the allegations of the complaint must be taken as true in proceedings determining the propriety of a general demurrer.

"On appeal from a judgment entered on an order sustaining a demurrer to a pleading without leave to amend, the allegations of the pleading must be regarded as true." (*Carlson* v. *Lindauer*, 119 Cal.App.2d 292, 301 [259 P.2d 925].)

We are further prompted to observe that "In the construction of a pleading, for the purpose of determining its effect, its allegations must be liberally construed, with a view to substantial justice between the parties." (Code Civ. Proc., § 452.)

Finally, we concur with appellant's final contention that section 3401 of the Commercial Code does not prohibit the application of the *alter ego* doctrine in a case where the debt is evidenced by a promissory note.

"A creditor may seek to *disregard the corporate entity*, and hold individuals liable on obligations of a corporation, where the corporate form is used to accomplish a fraudulent object. This is not an action based on fraud, for the cause of action and remedy sought may have nothing to do with fraud. The complaint merely sets forth additional facts of improper domination of the corporation as a basis for judgment against the individuals. [Citations.]" (2 Witkin, Cal. Procedure (1954) 1326.)

"Before the acts and obligations of a corporation can be legally recognized as those of a particular person, and *vice versa*, the following combination of circumstances must be made to appear: First, that the corporation is not only influ-

enced and governed by that person, but that there is such a unity of interest and ownership that the individuality, or separateness, of the said person and corporation has ceased; second, that the facts are such that an adherence to the fiction of the separate existence of the corporation would, under the particular circumstances, sanction a fraud or promote injustice.'' (*Minifie* v. *Rowley*, 187 Cal. 481, 487 [202 P. 673]; see also *Automotoriz etc. De Cal.* v. *Resnick*, 47 Cal.2d 792, 796 [306 P.2d 1, 63 A.L.R.2d 1042].) It is not even essential, apparently, that actual fraud be specifically alleged or that the *alter ego* doctrine always be specifically pleaded in the complaint in order for it to be applied in appropriate circumstances.

''There appears to be some authority to the effect that the *alter ego* doctrine must be pleaded in the complaint. . . . There is also authority, however, that where a defendant is charged with liability his denial thereof is sufficient to establish such liability upon the principle of *alter ego* even though the complaint is devoid of such an allegation.'' (*Auer* v. *Frank*, 227 Cal.App.2d 396, 403 [38 Cal.Rptr. 684, 8 A.L.R.3d 1108].) It therefore appears that the courts have followed a liberal policy of applying the *alter ego* doctrine where the equities and justice of the situation appear to call for it rather than restricting it to the technical niceties depending upon pleading and procedure. It is essential principally that a showing be made that both requirements, *i.e.,* unity of interest and ownership, and the promotion of injustice by the fiction of corporate separate existence, exist in a given situation. (*Associated Vendors, Inc.* v. *Oakland Meat Co.,* 210 Cal.App. 2d 825, 837 [26 Cal.Rptr. 806].)

In applying the doctrine, the courts have considered and have been influenced by a variety of factors which are fully elaborated in *Associated Vendors, Inc.* v. *Oakland Meat Co., supra,* 210 Cal.App.2d 825. Plaintiff in its second count has set forth allegations of the principal factors, including among others: that the individuals, especially including E. H. Bookasta, ''dominated'' the affairs of the corporation; that a ''unity of interest and ownership'' existed between respondent and the corporation; that the corporation is a ''mere shell and naked framework'' for individual manipulations; that its income was diverted to the use of the individuals and respondent; that the corporation was, in effect, inadequately capitalized; that the corporation failed to issue stock and to

abide by the formalities of corporate existence; that the corporation is and has been insolvent; and that adherence to the fiction of separate corporate existence would, under the circumstances, promote injustice. Assuming these facts can be proved, each of the several shareholders of Orange Empire Productions, regardless of the size of their respective interests, may be held liable as principals or partners under the *alter ego* principle. (*Riddle* v. *Leuschner,* 51 Cal.2d 574, 580-581 [335 P.2d 107].)

Appellant has set forth in its second count allegations adequate and sufficient to state a cause of action against respondent on the *alter ego* theory and is entitled to an opportunity to present evidence in support of the facts alleged. The judgment of dismissal as to respondent is affirmed as to the first count and is reversed as to the second count.

Wood, P. J., and Lillie, J., concurred.

A petition for a rehearing was denied December 27, 1968, and respondent's petition for a hearing by the Supreme Court was denied January 29, 1969.