[No. B037375. Second Dist., Div. Seven. May 9, 1990.]

MANFRED STANSFIELD et al., Plaintiffs and Appellants, v. NORMAN STARKEY et al., Defendants and Respondents.

.. 

COUNSEL

Lawrence Levy, Lyle Francis Middleton and Robert A. Brown for Plaintiffs and Appellants.

Rabinowitz, Boudin, Standard, Krinsky & Lieberman, Eric M. Lieberman, Terry Gross, Bowles & Moxon, Kendrick L. Moxon, Turner, Gerstenfeld, Wilk & Tigerman, Lawrence E. Heller and William Drescher for Defendants and Respondents.

OPINION

WOODS (Fred), J.—The trial court sustained without leave to amend demurrers to appellants' fifth amended complaint and dismissed actions against respondents Author Services, Inc., and Church of Spiritual Technology. We find no abuse of trial court discretion and therefore affirm the judgment.

### PROCEDURAL BACKGROUND

On December 31, 1986, appellants (six individuals, one nonprofit organization, and a present class of approximately four hundred persons who

could number several thousand) filed their original complaint. Named as defendants were fourteen individuals, one estate, six nonprofit organizations, one for profit corporation, one nonprofit religious corporation, five undesignated entities, and one hundred Does. Three causes of action were alleged: (1) fraud, (2) breach of a fiduciary relationship or duty, and (3) injunctive relief and constructive trust.

The complaint alleged that appellants were or had been members of the Church of Scientology, that they had been induced to join the church by defendants' misrepresentations, that defendants had breached a fiduciary duty by disclosing confidential confessional information, and that defendants had diverted church property to themselves.

A demurrer to the complaint was filed by defendant Sherman D. Lenske, the only defendant then served.

On March 18, 1987, the scheduled date for the demurrer hearing, appellants stated, "We'll accept the tentative ruling." In pertinent part, the ruling of the court (Judge Dowds) provided: "Demurrer sustained to each cause of action per CCP § 430.10(e) and (f)[1] on the grounds set forth in the moving papers. In particular, plaintiff must comply with [¶] 103(d) of the Law Department Manual,[2] fraud must be specifically pleaded (who said what to whom and when and where) and the circumstances of discovery of the fraud must be pleaded (when, by whom, where and how). If discovery was more than 3 years before the filing of the complaint, facts must be pleaded showing why it wasn't discovered earlier. 30 days to amend. 30 days to respond."

Respondents, Author Services, Inc. (ASI), and Church of Spiritual Technology (CST), the only other served defendants, were given 20 days, after the filing of the amended complaint, to respond.

On April 17, 1987, appellants filed their second pleading, the first amended complaint. It alleged five causes of action: (1) fraud, (2) breach of fiduciary duty and/or relationship(s), (3) invasion of privacy, (4) intentional

---

[1] "The party against whom a complaint . . . has been filed may object, by demurrer . . . as provided in Section 430.30, to the pleading on any one or more of the following grounds: . . . (e) The pleading does not state facts sufficient to constitute a cause of action. (f) The pleading is uncertain. As used in this subdivision, 'uncertain' includes ambiguous and unintelligible."

[2] "(d) (Identifying Parties and Causes of Action) Each cause of action should be identified as to (1) its nature (fraud, breach of contract, etc.), (2) the particular plaintiffs asserting it, and (3) the particular defendants against whom it is asserted. For example: CAUSE OF ACTION FOR INFLICTION OF EMOTIONAL DISTRESS BROUGHT BY PLAINTIFF JANE BLACK AGAINST DEFENDANTS JONES, SMITH, BROWN AND DOES 2 AND XI."

infliction of emotional distress, and (5) injunctive relief and constructive trust.

The fraud cause of action was again based upon alleged misrepresentations which induced appellants to join the Church of Scientology. The other four causes of action arose from alleged disclosures of confidential confessional communications.

Respondents (ASI and CST) and defendant Sherman D. Lenske demurred.

The court (Judge Dowds) sustained the demurrers to all five causes of action and detailed the deficiencies of the first amended complaint in a lengthy order.[3] Defendant Lenske's motion for sanctions (Code Civ. Proc.,

[3] The order reads: "In this matter heretofore argued and submitted, the Court now rules as follows: Each demurrer is sustained to all causes of action of the first amended complaint pursuant to Code of Civil Procedure Section 430.10(f). Each cause of action is uncertain in that it does not state who performed the actions for which the various defendants are apparently proposed to be held liable under the doctrine of Respondiat [sic] Superior and what acts were performed by each such person and at what time. In oral argument it was asserted by counsel for the plaintiffs that the name of the Church corporation with which the individual plaintiffs were associated changed from time to time, from which it may be inferred that the principal of the agents who performed the acts in question assertedly changed from time to time. At the very least, each defendant is entitled to know the names of the person [sic] for whom [sic] acts the particular defendant is proposed to be held liable and what acts were performed by which asserted agent and when. Also the complaint is uncertain as to which plaintiff had a fiduciary relationship with which defendant and during what period of time and what facts gave rise to the fiduciary relationship.

"The demurrer of each demurring party is also sustained pursuant to Section 430.10(e) as to the first and second causes of action. As to both causes of action, the demurrer is sustained on the ground of the statute of limitations. It appears from the face of the complaint that the acts complained of occurred beyond the normal period of the statute of limitations. If it is asserted that the fraud and violation of fiduciary relationship was [sic] not discovered until some later time, it is necessary to plead when the facts were discovered and sufficient facts from which it would appear that the plaintiffs should not with reasonable diligence have ascertained the alleged misconduct at an earlier date. Also as to the first cause of action, fraud is not pleaded with sufficient particularity. As pointed out in respect of Mr. Lenske's demurrer in respect of the original complaint, it must be alleged what act was performed by what person and when and where, i.e., who said what to whom and when and where. It is recognized that in a class action it is not necessary to plead specifically the acts giving rise to the cause of action with respect to each unnamed member of the plaintiff class, but such particular allegations must certainly be made as to the named plaintiffs. The court does not reach any other pending demurrers and they are ordered off calendar. 30 days to amend. 30 days to respond.

"The motion of defendant Sherman D. Lenske for sanctions under Code of Civil Procedure Section 128.5 is granted. The court finds that the action of the plaintiffs in filing the first amended complaint without coming close to complying with the directions of the court given upon the sustaining of Mr. Lenske's demurrer to the original complaint was action taken in bad faith and was frivolous. Plaintiffs are ordered to pay to Mr. Lenske $350.00 within 10 days as the reasonable expenses incurred by moving party as the result of such action."

§ 128.5)[4] against appellants was granted. Appellants were given 30 days to file an amended complaint.

In their third pleading, the second amended complaint,[5] appellants realleged the previous five causes of action and added a sixth, conspiracy. Respondents and defendant Sherman D. Lenske demurred.

The court (Judge Dowds) sustained *without* leave to amend respondents'[6] demurrers to the fraud and conspiracy causes of action and sustained *with* leave to amend the demurrers to the other causes of action.[7] Again the court detailed the pleading deficiencies in elaborate detail.[8]

---

[4] Unless otherwise noted all statutory references are to the Code of Civil Procedure.

[5] Mislabeled "first amended complaint."

[6] The demurrer of defendant Sherman D. Lenske was not ruled upon because the court had earlier dismissed the action as to him. The dismissal resulted from appellants' violation of discovery orders. Appellants did not, apparently, seek review of this dismissal and Mr. Lenske is not a party to this appeal.

[7] The court's order omitted reference to the injunction and constructive trust cause of action.

[8] The order reads: "Demurrer having been argued and submitted, the court now rules as follows: The demurrers of defendants Church of Spiritual Technology and Author Services Inc. to the Second Amended Complaint (erroneously captioned as 'FIRST AMENDED COMPLAINT' since a First Amended Complaint had been previously filed) is sustained pursuant to C.C.P. Section 430.10(e) without leave to amend as to the First and Second Causes of Action.

"The injury complained of in these causes of action is that, as a result of false representations, the plaintiffs were induced to join a church and to contribute their money and time and efforts to the church over long periods of time. Resolution of this controversy would require the court to determine whether it was an advantage or a detriment to a plaintiff to be a member of a particular church over a considerable period of time. This is not a judiciable [sic] controversy. Further, after three attempts and specific directions by the court, the fraud asserted to have been practiced by these particular defendants is still not specifically alleged and the court must conclude that there are no facts constituting fraud by them that can be truthfully alleged. There is an absence of pleadings as to what agents of these defendants made the alleged representations to each of the named plaintiffs, and when and where they were made. In particular, it [is] not alleged who acted as the agent of what principal.

"Further, to the extent the complaint alleges a conspiracy to divert funds from the church to an individual, the cause of action would lie in the church corporation, although under appropriate circumstances a derivative action could be brought on behalf of the corporation, if it did not itself act.

"The demurrer is sustained as to the Third, Fourth and Fifth Causes of Action pursuant to C.C.P. section 430.10(e) with thirty (30) days to amend and thirty (30) days to respond. These causes of action possibly relate to an actual or threatened disclosure of information given by a plaintiff to the church during a confessional session. It is not clearly alleged that any such material was actually disclosed in respect of any named plaintiffs. If this is the allegation, it must be clearly alleged and at least the nature of the material disclosed and the person or persons to whom it was disclosed must be alleged, together with facts showing that there is a threat of repetition insofar as injunctive relief is requested. If it is asserted that the threat of disclosure constituted outrageous conduct giving rise to emotional distress, additional facts must be pled the nature of the material material [sic] threatened to be disclosed from which it could be ascertained that the conduct as alleged was outrageous. As to these

In their fourth pleading, the third amended complaint, appellants added two new causes of action, establishment of resulting trust and unfair advantage in confidential relationship, split injunctive relief and constructive trust into separate causes of action, realleged causes of action for breach of confidential relationship, invasion of privacy, and intentional infliction of emotional distress, and increased the number of Does from 100 to 5,000. As with their successive complaints appellants served only two defendants, respondents, ASI and CST.

Respondents demurred and ASI also made a motion to strike.

On December 7, 1987, the court (Judge Dowds) sustained *without* leave to amend the demurrers to three causes of action: establishment of resulting trust, imposition of constructive trust, and unfair advantage in confidential relationship.[9] The court sustained *with* leave to amend[10] the demurrers to the other four causes of action. In its lengthy order the court specified pleading deficiencies, made distinctions between appellants, and imposed sanctions on appellants.[11]

---

causes of action, there must be an allegation as to what person or persons acted as the agent of each of these demurring defendants in performing the acts complained of."

[9] ASI's motion to strike these causes of action was also granted.

[10] An amended minute order gave appellants 20 days to amend the complaint.

[11] The order reads: "IN these matters heretofore argued and submitted, the court now rules as follows: [¶] Motion of Author Services, Inc. to strike the first, second and third causes of action of the Third Amended Complaint is granted. These causes of action (though captioned in terms of the relief requested instead of the wrongful conduct complained of) are in substance the same as the fraud causes of action previously filed, as to which the court sustained demurrers without leave to amend. Balance of motion to strike (except as to sanctions) denied.

"Demmurrers of defendants Author Services, Inc. and Church of Spiritual Technology to first, second and third causes of actions sustained per CCP§ 430.10(e) without leave to amend. The gravamen of these causes of action is that the members of the Church of Scientology were induced to join that church and contribute money and services to it over long periods of time by reasons of misrepresentations about the Church and its founder. To adjudicate this controversy the court would have to determine whether it was an advantage or detriment to plaintiffs to be a member of this particular church. This is not a justicable [*sic*] controversy. In addition, taken in context and as a whole, the alleged representations relate to religious assertions and beliefs into which courts may not inquire. Further, in four attempts, the plaintiffs have not alleged the fraud with the specificity which the law requires.

"The demurrers of the moving parties to causes of actions 4, 5, 6 and 7 of all plaintiffs other than Valerie Stansfield and Jerry Whitfield are sustained per CCP§ 430.10(e). There is no factual allegation of breach of confidential relationship, invasion of privacy, outrageous conduct or the threat of the same as to these plaintiffs. Paragraphs 7, 8, and 9 do not allege that the same things happened to other plaintiffs that happened to Valerie Stansfield and Jerry Whitfield.

"The demurrers of the demurring defendants are sustained per CCP§ 430.10(e) as to causes of action 5 and 6 in respect of Valerie Stansfield and Jerry Whitfield. There are no factual allegations of invasion of privacy or outrageous conduct (paragraph 77 is not incorporated).

In their fifth pleading, the fourth amended complaint, appellants alleged four causes of action: (1) breach of confidential relationship, (2) invasion of privacy, (3) intentional infliction of emotional distress and, (4) injunctive relief. Respondents both demurred and made motions to strike.

The court (Judge Cooperman), in a four-page order,[12] partly granted the motions to strike, sustained the demurrers to the first three causes of action

"The demurrers of the moving parties are sustained per CCP§ 430.10(f) as to causes of action 4, 5, 6, and 7. These causes of action are uncertain as to when the acts complained of occurred. This uncertainty is particularly acute because of the allegations that certain conduct complained of became public knowledge in July of 1984.

"Any other demurrers are ordered off calendar.

"Plaintiffs are order[ed] to pay $750.00 to each of the moving defendants pursuant to CCP§ 128.5 as the reasonable expenses they incurred by reason of plaintiffs' bad faith actions and conduct in re-pleading causes of action as to which demurrers had previously been sustained without leave to amend. This is frivolous conduct as defined in that statute."

[12] The order reads: "In these matters, heretofore argued and submitted, on March 2, 1988, the Court now rules as follows. [¶] The motions of defendants Author Services, Inc., and of defendant Church of Spiritual Technology to strike the Fourth Amended Complaint are granted as to the following allegations, by reason of the fact that said allegations pertain to causes of action previously removed by the Court, on order of Judge Dowds.

"Page 6, line 14, beginning with the new sentence, to line 22, inclusive;

"Page 7, line 1, beginning with the new sentence, to line 4, inclusive;

"Page 7, line 14, beginning with the new sentence, to line 17, inclusive;

"Page 7, line 25, beginning the new sentence, to line 26, inclusive;

"Page 8, paragraph 16;

"Page 8, line 23, beginning with the new sentence, to line 27, ending wit[h] the word 'assets';

"Page 9, paragraphs 21 and 22;

"Page 10, paragraph 25;

"Page 10, paragraph 27 (continues onto page 11);

"Page 11, paragraph 30 (continues onto page 12);

"Page 12, paragraphs 31 and 22;

"Page 13, paragraphs 33, 34, 35 and 36 (continues onto page 14);

"Page 14, paragraphs 37, 38, 39 and 40 (continues onto page 15);

"Page 15, paragraphs 41, 42 and 43 (continues onto page 16);

"Page 16, paragraphs 44 and 45 (continues onto page 17);

"Page 17, paragraphs 46 and 47 (continues onto page 18);

"Page 18, paragraphs 48 and 49 (continues onto page 19);

"Page 19, paragraphs 50 and 51 (continues onto page 20);

"Page 20, paragraphs 52 and 53 (continues onto page 21);

"Page 21, paragraphs 54 and 55 (so far as paragraph 55 re-alleges material hereinabove ordered stricken);

"Page 23, paragraph 64 (incomplete in present form);

"Page 25, paragraph 69, beginning with the last word on line 24, to line 27, inclusive);

"Page 26, paragraphs 72 and 73;

"Page 27, paragraph 74 (so far as it re-alleges material hereinabove ordered stricken), and paragraphs 75 and 76;

"Page 28, paragraph 77 (so far as it re-alleges matter hereinabove ordered stricken);

"Page 30, paragraph 83;

"Page 31, paragraph 84 (so far as it re-alleges matter hereinabove ordered stricken);

(the fourth, injunctive relief, being a remedy not a cause of action), denied sanctions, and admonished appellants "that this is the last opportunity that will be extended to amend the complaint in the manner required herein and in the prior orders rendered by Judge Dowds." Appellants were given 30 days to amend.

On April 8, 1988, appellants filed their sixth and final pleading, the fifth amended complaint. Although given leave to do so, appellants did not reallege a cause of action for either invasion of privacy or intentional infliction of emotional distress. Appellants did, however, reallege a breach of confidential relationship cause of action and also sought injunctive and

---

"Page 32, paragraph 89 from line 8 to line 17, up to and including the end of the sentence on line 17;

"Page 33, paragraph 1.b and paragraph 2.b (continues onto page 34.)

"The Court has ordered stricken paragraph 73 of the Fourth Amended Complaint in that the allegations pertaining to punitive or exemplary damages are not in compliance with Civil Code section 3294, [*] as effective January 1, 1988. In addition, said paragraph in setting forth the amount of punitive damages, does not comply with Code of Civil Procedure section 426.10(b). [*sic*] [See **]

"Similarly, paragraph 83 of the Fourth Amended Complaint is ordered stricken for non-compliance with Civil Code section 3294 and with Code of Civil Procedure section 425.10. [**]

"Paragraph 1.b of the prayer for relief, pertaining to punitive damages is stricken for non-compliance with Code of Civil Procedure section 425.10(b). [See **]

"The demurrers of the moving parties to the First, Second and Third causes of action as to plaintiffs other than Valerie Stanfield and Jerry Whitfield are sustained per C.C.P. section 430.10(e). There is no factual allegation of breach of confidential relationship, invasion of privacy, outrageous conduct or the threat of same, as to the remaining named plaintiffs, as was indicated by Judge Dowds in the minute order of December 7, 1987. In this connection, this Court notes that paragraph 64, (save and except for lines 1 through 5, on page 24) is incomplete.

"The demurrers of the moving parties to the First, Second and Third causes of action are sustained per Code of Civil Procedure section 430.10(f). These causes of action are uncertain as to the identity of the alleged agent or agents of defendants who allegedly wrongfully communicated plaintiffs' confidential information to third parties and as to the identity of the third parties to whom such alleged communications were made. The prior rulings of Judge Dowds have required such information to be pleaded with respect to the named plaintiffs.

"Counsel for plaintiffs has stated to the Court that such specific pleading is not required by law, and has cited *Newberg on Class Actions,* section 6.13, and *Donson Stores, Inc.* v. *American Bakeries Company,* (1973) 58 F.R.D. 485, and *Abramovitz* v. *Ahern* (1982) 96 F.R.D. 208, 211, in support of his position. This Court has read the foregoing authorities and has determined that they do not support plaintiffs' position, as expressed to the Court.

"Other demurrers and motions to strike are ordered off calendar. Counsel for plaintiff shall have 30 (thirty) days to amend, and the moving defendants shall have 30 (thirty) days to respond. Counsel for plaintiffs is admonished that this is the last opportunity that will be extended to amend the complaint in the manner required herein and in the prior orders rendered by Judge Dowds.

"The moving parties' request for monetary sanctions is at this time denied, in light of the admonition hereinabove set forth."

---

* Civil Code section 3294, subdivision (a) provides: "In an action for the breach of an obligation not arising from contract, where it is proven by clear and convincing evidence that the

constructive trust relief. And appellants alleged a new cause of action for racketeering prohibited by the Racketeer Influenced and Corrupt Organizations Act (RICO)(18 U.S.C. § 1961 et seq.).

By its order of July 20, 1988,[13] the court (Judge Cooperman) sustained without leave to amend the demurrers of respondents. Thereafter the court signed orders of dismissal and appellants appealed.

---

defendant has been guilty of oppression, fraud, or malice, the plaintiff, in addition to the actual damages, may recover damages for the sake of example and by way of punishing the defendant."

**Section 425.10 reads: "A complaint or cross-complaint shall contain both of the following: [¶] (a) A statement of the facts constituting the cause of action, in ordinary and concise language. [¶] (b) A demand for judgment for the relief to which the pleader claims he is entitled. If the recovery of money or damages be demanded, the amount thereof shall be stated, unless the action is brought in the superior court to recover actual or punitive damages for personal injury or wrongful death, in which case the amount thereof shall not be stated."

[13] The order reads: "Demurrers to Fifth Amended Complaint are sustained, *as to demurring defendants,* without leave to amend.

"The demurrers as to the First cause of action, seeking relief under RICO, (18 U.S.C. § 1961, et seq.) are sustained under CCP 430.10(e). To the extent that plaintiffs seek relief pertaining to personal injury, loss of reputation, pain and suffering, or emotional distress, (see Complaint, paragraph 42) RICO provides no remedy. (See 18 U.S.C. § 1964(c)); *Johnsen* v. *Rogers* (1982) 551 F.Supp. 281).

"No facts have been alleged by plaintiffs with respect to alleged laundering of monetary instruments by defendants, as a pattern of racketeering activity under 18 U.S.C. § 1956. (See paragraph 37 of Complaint).

"Plaintiffs have also failed to plead facts pertaining to any alleged violation on the part of the demurring defendants with respect to the Currency and Foreign Transactions Reporting Act (31 U.S.C. § 5316(a). (Complaint, paragraph 39.)

"Under 18 U.S.C. § 1951(b)(2), '[t]he term "extortion" means the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence or fear, or under color of official right.'

"Although 'extortion' is referred to in paragraph 35. of the Fifth Amended Complaint, and in subparagraph 35. (ii), (iii), (iv), (xii), (xiv), and (xvi), no facts are alleged therein which conform with the legal definition of the term 'extortion', above quoted. For example, in paragraph 35. subparagraphs (ii) and (iii) it is alleged that plaintiffs Manfred and Valerie Stansfield, and Jerry and Hana Whitfield, respectively, had extortion practiced against them by defendants because said named plaintiffs refused, in 1986, to pay, in cash or in kind, for defendants' products and services. Plaintiffs allege that certain confessional information concerning Valerie Stansfield was communicated by one Dr. Lee to Valerie's mother, and concerning Jerry, was communicated by one Al Bei to Jerry's father. Lee and Bei are alleged to be agents of defendants.

"However, there is no allegation that the communications by the alleged agents of defendants were the result of any threat or threats by anyone, or that property was obtained from the named plaintiffs in connection therewith. Further, the allegations in paragraph 35. (iv) that defendants declared in March, 1982 that plaintiff Hana Whitfield was a 'Suppressive' person and that defendants declared in February, 1983 that plaintiff Franklin Freedman was a 'Suppressive' person do not, in anywise, constitute extortion as hereinabove defined.

"Paragraph 35. (xvi), in which plaintiffs allege '[d]uring the period 1983 through 1984, defendant's agent, Don Larson extorted in excess of $3,000,000.00 (Three Million Dollars) from plaintiff class members as a direct result of the extortionate racketeering activity perpetrated against said plaintiffs as hereinabove alleged' is devoid of facts sufficient to place defendants on reasonable notice of the charge being made by plaintiffs.

## DISCUSSION

### A. Standard of review

"In reviewing the sufficiency of a complaint against a general

"The allegations of paragraph 41. of the Fifth Amended Complaint, pertaining to alleged monetary losses suffered by the named plaintiffs and referring to labor performed by said plaintiffs for defendants, are incomprehensible as pleaded, and fail to place defendants upon reasonable notice as to the basis of the alleged claims.

"The demurrers as to plaintiffs' Second cause of action seeking relief for alleged breach of confidential relationship are sustained under CCP § 430.10(e).

"The gravamen of this cause of action is the alleged unauthorized disclosure by agents of defendants, to third persons, of confidential information regarding plaintiffs, secured by defendants in a confessional context, to accomplish wrongful purposes of defendants, including coercing plaintiffs into silence, forcing them to pay and support Churchs [sic] of Scientology, and to comply '. . . with whatever defendants and their agents and employees demanded in a conscious disregard of plaintiffs' rights and safety. . . .' (See Complaint, paragraph 54.)

"Plaintiffs were advised in the ruling of the court sustaining demurrers to the Fourth Amended Complaint, rendered on March 8, 1988, that the Complaint was uncertain '. . . as to the identity of the alleged agent or agents of defendants who allegedly wrongfully communicated plaintiffs' confidential information to third parties and as to the identity of the third parties to whom such alleged communications were made. The prior rulings of Judge Dowds have required such information to be pleaded with respect to the named plaintiffs. . . .'

"This Court also stated in its minute order of March 8, 1988, that '[c]ounsel for plaintiffs is admonished that this is the last opportunity that will be extended to amend the complaint in the manner required herein and in the prior orders rendered by Judge Dowds.'

"Notwithstanding the foregoing admonition, in paragraph 46. of the Fifth Amended Complaint, plaintiffs, although alleging disclosure by defendants of alleged intimate details of the personal lives of plaintiffs, Manfred and Valerie Stansfield and Jerry and Hana Whitfield, to members of the Church of Scientology, and to plaintiffs' relatives, families, friends and third parties, have failed to identify the alleged communicators of confidential information, and to identify the third parties who received such communication. This information, and particularly the identity of the recipients of the alleged wrongful communications, should be clearly known to plaintiffs.

"In paragraph 45. of the Fifth Amended Complaint plaintiffs allege, only in the most general terms, breach of confidences of plaintiffs by defendants' disclosure of confidential, confessional material, without any effort to plead facts, as required by the Court.

"While it is true that in paragraph 35. (ii) and (iii), part of plaintiffs' First cause of action), which is incorporated by reference in the Second cause of action, plaintiffs plead the names of Dr. Lee and Al Bei as alleged agents of defendants, who communicated information about Valerie Stansfield's to Valerie's mother, and about Jerry Whitfield to Jerry's father, respectively, it does not appear that the alleged communications were of confidential information, in conformity with other allegations of the Second cause of action, but instead consisted of apparently false information concerning said plaintiffs.

"In the Court's judgment, plaintiffs have not complied with the Court's admonition.

"Although the Court has examined the Complaint in *Aznaran, et al., v. Church of Scientology of Calif., Inc., et al.,* Case No. CV 88-1786-WDK; the opinion of the United States Tax Court (83 TC No. 25) *Church of Scientology of Calif. v. Commissioner of Internal Revenue* (1987) USCA (9th Cir.) 823 F.2d 1310, judicial notice is not taken with respect to such records, which were lodged by plaintiffs, in that they contain no facts relevant to the case at bench."

We have taken judicial notice of this order, part of the superior court file (Evid. Code, § 452, subd. (d)) ordered to be but not included as part of the record on appeal, after duly notifying all counsel. (Evid. Code, §§ 455, 459.)

demurrer, we are guided by long-settled rules. 'We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. We also consider matters which may be judicially noticed.' [Citation.] Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.] When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action. [Citation.] And when it is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. [Citations.] The burden of proving such reasonable possibility is squarely on the plaintiff." (*Blank* v. *Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].)

It is the correctness of the trial court's action in sustaining a demurrer, not its reasons, which is reviewable. (*Maheu* v. *CBS, Inc.* (1988) 201 Cal.App.3d 662, 670 [247 Cal.Rptr. 304].) The burden is upon appellant to demonstrate that the action of the trial court was an abuse of discretion. (*Goodman* v. *Kennedy* (1976) 18 Cal.3d 335, 349 [134 Cal.Rptr. 375, 556 P.2d 737].)

*B.   Scope of review*

Our review encompasses not merely appellants' last pleading and the court's order sustaining without leave to amend the demurrers to that pleading but also certain other pleadings and orders. "Although ordinarily an appellate court will not consider the allegations of a superseded complaint (see *Foreman & Clark* v. *Fallon* (1971) 3 Cal.3d 875, 884 [92 Cal.Rptr. 162, 479 P.2d 362]), that rule does not apply when the trial court denied plaintiffs leave to include those allegations in an amended complaint." (*Committee on Children's Television, Inc.* v. *General Foods Corp.* (1983) 35 Cal.3d 197, 209 [197 Cal.Rptr. 783, 673 P.2d 660].)

*C.   Fraud*

Appellants alleged a fraud cause of action in each of their first three pleadings. Demurrers to the first and second fraud pleadings were sustained *with* leave to amend. But the demurrers to the third fraud pleading were sustained *without* leave to amend. We therefore consider whether or not this sustainment order was within the court's discretion.

The elements of fraud or deceit (see Civ. Code, §§ 1709, 1710) are: a representation, usually of fact, which is false, knowledge of its falsity, intent to defraud, justifiable reliance upon the misrepresentation, and damage

resulting from that justifiable reliance. (*Roberts* v. *Ball, Hunt, Hart, Brown & Baerwitz* (1976) 57 Cal.App.3d 104, 109 [128 Cal.Rptr. 901]; 5 Witkin, Summary of Cal. Law (9th ed. 1988) Torts, § 676, p. 778.)

■ "Every element of the cause of action for fraud must be alleged in the proper manner and the facts constituting the fraud must be alleged with sufficient specificity to allow defendant to understand fully the nature of the charge made." (*Roberts* v. *Ball, Hunt, Hart, Brown & Baerwitz, supra*, 57 Cal.App.3d at p. 109.)

But the rationale for this " 'strict requirement[ ] of pleading' " (*Committee on Children's Television, Inc.* v. *General Foods Corp., supra*, 35 Cal.3d 197, 216) is not merely notice to the defendant. " 'The idea seems to be that allegations of fraud involve a serious attack on character, and fairness to the defendant demands that he should receive the fullest possible details of the charge in order to prepare his defense.' " (*Ibid.*) Thus " 'the policy of liberal construction of the pleadings . . . will not ordinarily be invoked to sustain a pleading defective in any material respect.' " (*Ibid.*)

This particularity requirement necessitates pleading *facts* which "show how, when, where, to whom, and by what means the representations were tendered." (*Hills Trans. Co.* v. *Southwest* (1968) 266 Cal.App.2d 702, 707 [72 Cal.Rptr. 441].)

■ Before turning to appellants' fraud allegations we observe that some misrepresentations, just as some threats, are "protected religious speech and cannot provide the basis for tort liability." (*Molko* v. *Holy Spirit Assn.* (1988) 46 Cal.3d 1092, 1123-1124 [252 Cal.Rptr. 122, 762 P.2d 46].) E.g., the threat that if one left the church one's relatives " 'would be damned in Hell forever' " (*id.* at p. 1123) implicates religious beliefs and is not justiciable. But as we recently explained in *Wollersheim* v. *Church of Scientology* (1989) 212 Cal.App.3d 872 [260 Cal.Rptr. 331], *actions,* although based upon religious beliefs, may be tortious. (*Id.* at p. 884.)

■ Appellants alleged (in paragraph 31 of the second amended complaint) the following misrepresentations: the Church of Scientology was tax exempt; it had a charitable nature; its founder, L. Ron Hubbard, received no funds paid by members; L. Ron Hubbard received low level compensation for his work; L. Ron Hubbard was a nuclear physicist, highly decorated war veteran who had been wounded during four years of combat; L. Ron Hubbard was twice pronounced medically dead but cured himself with dianetics; and L. Ron Hubbard, by applying the principles of dianetics and scientology, was in perfect health. Appellants also alleged justifiable reliance. As to the "how, when, where, to whom, and by what means the

representations were tendered" (*Hills Trans. Co.* v. *Southwest, supra,* 266 Cal.App.3d at p. 707) the following allegation is representative.

"Valerie Stanfield, a member from 1961 to 1983, paid in excess of $10,000 to the church and labored for said church in excess of ten (10) years. The representations made in paragraph 31 above were made to Valerie Stansfield by a staff member of the church—Harold Deford. The representations were also made in tapes of L. Ron Hubbard and certain publications of Scientology. These representations were made in 1961 in Washington, DC."

It was alleged that each named appellant upon hearing or reading the representations joined the church. Some joined as early as 1957, some as late as 1974. They also left at different times. Some in 1982, some in 1983, some in 1984.

The trial court found these allegations inadequate. We conclude it was within its discretion to so find.

As the trial court noted (see fn. 8) appellants did not allege "who acted as the agent of what principal." In appellant Valerie Stanfield's circumstance it was alleged that in 1961 a Harold Deford made the misrepresentations. But it was *not* alleged that Harold Deford, in 1961, was an agent of either respondent ASI or CST, nor even that ASI or CST had a corporate existence in 1961.

Appellants' alter ego and cross-agency allegations ("defendants and each of them, are the agents and employees of each other") are inconsistent with other allegations (such as "L. Ron Hubbard and defendants Norman Starkey . . . are or have been principal officers and/or controllers of all of the defendant corporations" and "David Miscavige, defendant, currently controls and totally dominates all Church of Scientology monies, assets and property throughout the world") and fail to include *facts* showing a unity of interest and a resultant injustice, prerequisites to an alter ego theory. (See *First Western Bank & Trust Co.* v. *Bookasta* (1968) 267 Cal.App.2d 910, 914-915 [73 Cal.Rptr. 657]; *Clejan* v. *Reisman* (1970) 5 Cal.App.3d 224, 238-239 [84 Cal.Rptr. 897]; *Rader* v. *Apple Valley Bldg. & Dev. Co.* (1968) 261 Cal.App.2d 308, 314 [68 Cal.Rptr. 108].)

It also was not clearly alleged that each representation was false *when made.* E.g., the complaint alleges that *all* representations were made to each of the six named appellants. But the complaint does *not* allege that the tax exempt representation was false in each of the six years (1957, 1961, 1962, 1965, 1968, and 1974) individual appellants relied upon it to join the church.

Similarly vague was the alleged causal connection between the misrepresentations and the harm to appellants. Appellants did not allege, e.g., that

in reliance upon the tax exempt representation they claimed and had been denied charitable tax deductions. Nor did appellants allege a representation they would be compensated for their labor.

Less than explicit and material were the allegations of inducement, viz., that appellants joined a *church* because it was tax exempt, its founder underpaid and a wounded war hero. Conversely, the representation that L. Ron Hubbard twice rose from the dead appears to implicate religious beliefs and thus is not justiciable. (*Molko* v. *Holy Spirit Assn., supra,* 46 Cal.3d 1092.)

Additionally, allegations purporting to explain delayed discovery of the falsity of the representations were cloudy and inconsistent. Although it was alleged that the representations were made as early as 1957 it was not until 1987 that appellants allegedly discovered their falsity. Yet it was simultaneously alleged, without explanation, that appellants left the church in 1982, 1983, and 1984 and that much of the true information was in the public domain by July 1984.

Equally general and imprecise was the allegation of intent to defraud. Appellants alleged that respondents (and all defendants) acted "with the intent to deceive the plaintiffs and cause them to form an alliance with the defendant 'church.' The extent and degree of the fraudulent misrepresentations varied depending upon the immediate goal of these defendants."

The trial court, in sustaining the demurrers without leave to amend, acted within its discretion. (Cf. *Peter W.* v. *San Francisco Unified Sch. Dist.* (1976) 60 Cal.App.3d 814, 827 [131 Cal.Rptr. 854]; *Norkin* v. *United States Fire Ins. Co.* (1965) 237 Cal.App.2d 435, 437-438 [47 Cal.Rptr. 15]; *Vaughn* v. *Certified Life Ins. Co.* (1965) 238 Cal.App.2d 177, 181-182 [47 Cal.Rptr. 619]; *Lesperance* v. *North American Aviation, Inc.* (1963) 217 Cal.App.2d 336, 344-345 [31 Cal.Rptr. 873].)

*D. Conspiracy*

■ Appellants alleged a conspiracy cause of action in their second amended complaint. It consisted of an incorporation of all the fraud allegations, a further allegation of a 1979 conspiracy to divert church funds, and an averment of proximate harm in an "unascertained sum."

The trial court was correct in sustaining the demurrers without leave to amend, for at least three reasons.

First, this cause of action by incorporating all the fraud allegations also incorporated all their defects.

Second, "[a] conspiracy cannot be alleged as a tort separate from the underlying wrong it is organized to achieve." (*McMartin* v. *Children's Institute International* (1989) 212 Cal.App.3d 1393, 1406 [261 Cal.Rptr. 437].) I.e., an agreement, however wrongful, is not itself a tort. It requires acts in furtherance to become one. And no such acts were alleged.

Third, the allegations of this cause of action expressly omitted respondents. Appellants alleged that "During 1979, defendants, John Peterson, David Miscavige, L. Ron Hubbard, Sherman Lenske and Does I through 100, knowingly and wilfully conspired and agreed among themselves . . . ."

### E.  Resulting trust and constructive trust

■ In their third amended complaint appellants alleged, as causes of action, a resulting trust and a constructive trust. But neither is a cause of action (5 Witkin, Cal. Procedure (3d ed. 1985) Pleading, §§ 788-791, pp. 232-235), only a remedy. Moreover, "[a] resulting trust arises to enforce the inferred intent of the parties" (*Dabny* v. *Philleo* (1951) 38 Cal.2d 60, 68 [237 P.2d 648]) and no such common intent was alleged. Additionally, specific identifiable property is a prerequisite for either type of trust and none was alleged.

The trial court acted within its discretion in sustaining the demurrers without leave to amend.

### F.  Invasion of privacy and intentional infliction of emotional distress

■ In their fourth amended complaint appellants alleged causes of action for invasion of privacy and intentional infliction of emotional distress. The trial court (Judge Cooperman) sustained demurrers to these causes of action but afforded appellants *leave to amend*. (See fn. 12.) Appellants did amend their complaint and filed a superseding fifth amended complaint which omitted these two causes of action. Under such circumstances "an appellate court will not consider the allegations of a superseded complaint." (*Committee on Children's Television, Inc.* v. *General Foods Corp., supra*, 35 Cal.3d 197, 209; *Foreman & Clark Corp.* v. *Fallon* (1971) 3 Cal.3d 875, 884 [92 Cal.Rptr. 162, 479 P.2d 362] [" 'Such amended pleading supplants all prior complaints. It alone will be considered by the reviewing court.' "]; *Alhambra Transfer etc. Co.* v. *Muse* (1940) 41 Cal.App.2d 92, 93 [106 P.2d 63] [". . . by amending his complaint after demurrer was sustained plaintiff waived error, if any, in the ruling of the court."].)

Error, if any, was waived by appellants when they filed their superseding fifth amended complaint which omitted both of these causes of action.

*G. Breach of confidential relationship, breach of fiduciary duty, taking unfair advantage of a confidential relationship*

■ Appellants variously labelled a cause of action whose elements are: a confidential relationship, a communication made in confidence, disclosure, and injury. (See *Younan* v. *Equifax* (1980) 111 Cal.App.3d 498 [169 Cal.Rptr. 478].) As observed by the trial court (Judge Cooperman), appellants, despite repeated and explicit admonishments, "failed to identify the alleged communicators of confidential information and to identify the third parties who received such communication." (See fn. 13.)

But more fundamental and fatal was appellants' failure to allege *disclosure* of a confidential communication. Alleged instead, as noted by the trial court, was disclosure of *"apparently false information,"* information *not* communicated by appellants, in confidence or otherwise.

Thus, the trial court correctly sustained the demurrers without leave to amend.

*H. RICO*

■ In their sixth pleading, the fifth amended complaint, appellants alleged a cause of action based upon the Racketeer Influenced and Corrupt Organizations Act (RICO)(18 U.S.C. §§ 1961-1968).

■ Although "RICO is primarily a criminal statute" (*Johnsen* v. *Rogers* (C.D.Cal. 1982) 551 F.Supp. 281, 284) whose purpose is "to seek the eradication of organized crime" (18 U.S.C. § 1961, note "statement of findings and purpose"), it also prescribes civil remedies (18 U.S.C. § 1964) which are available in California state courts. (*Cianci* v. *Superior Court* (1985) 40 Cal.3d 903 [221 Cal.Rptr. 575, 710 P.2d 375].)

To plead a civil RICO cause of action a plaintiff must allege: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (5) which injured his business or property. (*Sedima, S.P.R.L.* v. *Imrex Co.* (1985) 473 U.S. 479, 496-497 [87 L.Ed.2d 346, 358-359, 105 S.Ct. 3275]; *McMartin* v. *Children's Institute International, supra,* 212 Cal.App.3d 1393, 1406; 18 U.S.C. § 1964 (c).)

■ As the trial court noted (See fn. 13), general damages ("emotional and mental distress, anguish, shock, nervousness, pain and suffering") are not recoverable under RICO. (*Zimmerman* v. *HBO Affiliate Group* (3d Cir. 1987) 834 F.2d 1163, 1169.) Actual damages, trebled, to "business or property" are recoverable. (18 U.S.C. § 1964 (c).)

The predicate principally relied upon by appellants in alleging their RICO cause of action is extortion. Extortion is included within the

definition of "racketeering activity" (18 U.S.C. § 1961 (1)), and "racketeering activity" is prohibited by 18 U.S.C. § 1962. As defined by 18 United States Code section 1951 (b)(2) extortion means "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right." Penal Code section 518 provides essentially the same definition.[14]

Appellants have failed to allege facts satisfying the definition of extortion. No facts have been alleged that respondents *"obtained"* property by actual or threatened force. Instead what appellants alleged were, at most, instances of defamation communicated *after* appellants had left the church. (See fn. 13.) There is no allegation that the defamers made an extortionate demand for money or property, or that appellants parted with any money or property as a result of these defamations.

Other RICO pleading defects, less fundamental, were detailed by the trial court. (See fn. 13.)

We conclude that the order sustaining the demurrer without leave to amend was within the trial court's discretion.

### DISPOSITION

The judgment is affirmed. Costs on appeal are awarded to respondents.

Lillie, P. J., and Johnson, J., concurred.

---

[14] "Extortion is the obtaining of property from another, with his consent, or the obtaining of an official act of a public officer, induced by a wrongful use of force or fear, or under color of official right."